IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SUSAN CLANCY-FISHER** : | |
| : | **CIVIL ACTION** |
| **Plaintiff,** : | |
| : | |
| v. : | |
| : | |
| **CITY OF PHILADELPHIA, and CITY** : | |
| **OF PHILADELPHIA FIRE** : | **NO. 02-3713** |
| **DEPARTMENT** : | |
| : | |
| **Defendants.** : | |

**DuBOIS, J.**                                                                                                    **October 30, 2002**

### ORDER AND MEMORANDUM

### O R D E R

**AND NOW**, this 30th of October, 2002, upon consideration of Defendants' Motion to Dismiss Plaintiff's Complaint (Document No. 5, filed August 9, 2002), and Plaintiff's Memorandum of Law in Opposition to the Defendants' Motion to Dismiss Plaintiff's Complaint (Document No. 9, filed September 13, 2002), **IT IS ORDERED** that, for the reasons set forth in the following Memorandum, Defendants' Motion to Dismiss Plaintiff's Complaint is **GRANTED** and plaintiff's Complaint is **DISMISSED WITH PREJUDICE.**

### MEMORANDUM

On June 11, 2002, plaintiff filed a Complaint against defendants alleging sex discrimination under Title VII of the Civil Rights Act, as amended, 42 U.S.C.§ 2000e et. seq. Plaintiff asserts, inter alia, that because defendants prevented her from, and showed no support for her requests in,

disciplining a subordinate employee, she was subjected to a hostile work environment and thereby constructively discharged on the basis of her sex.

Presently before the Court is defendants' Motion to Dismiss Plaintiff's Complaint (Document No. 5, filed August 9, 2002). For the reasons which follow, the Court will grant defendants' Motion and dismiss plaintiff's Title VII claims with prejudice.

### I.   BACKGROUND

The case arises out of allegations of sex discrimination in the workplace by defendants. On March 28, 1997, plaintiff began working for defendants as a CETA Fire Communications Assistant. Complaint ¶¶ 8, 9. Following a promotion to the Civil Service position of Fire Dispatcher Trainee, she became a Fire Equipment Dispatcher I ("FED I") on July 21, 1980, id. ¶ 9, and remained in this capacity until she resigned on October 22, 1987. Id. ¶ 8.

Plaintiff began her second employment tenure with defendants on September 26, 1994, as a Clerk Typist I; she was then promoted to the position of FED I in the Fire Communication Center ("FCC"). Id. ¶¶ 8, 9. On March 6, 2000, plaintiff became a FED II, commonly referred to as an FCC Supervisor. Id. ¶ 9. Plaintiff held this position until her resignation on October 19, 2000. Id.

Plaintiff's Title VII gender discrimination claim stems from plaintiff's supervision of one "problem" subordinate employee while plaintiff worked as an FCC Supervisor. Specifically, plaintiff alleges that supervisors Michael Moore ("Moore") and Steven Imszenmick ("Imszenmick") acknowledged that the subordinate employee had "disciplinary and performance problems," but took no corrective action against the employee and would not permit plaintiff to

"properly discipline" the employee, notwithstanding repeated protests by plaintiff. Id. ¶¶ 13, 14, 17. According to the Complaint, the "problem" subordinate acted in an "insolent and insubordinate manner" towards plaintiff and subjected her to offensive and derogatory remarks and harassing behavior. Id. ¶ 25.

On one occasion, Moore informed plaintiff that he had much greater concerns regarding the operations of the communications center than the subordinate's disciplinary problems and told her that the difficulties she was experiencing were "baby problems." Id. ¶ 19. Moore also told plaintiff that she needed to resolve the issue herself and that "the men don't come to me with their problems ... we handle them ourselves." Id. ¶ 20. Several weeks later, plaintiff submitted a memorandum to Imszenmick documenting the continued problems with the employee; this submission angered Moore. Id. ¶¶ 21, 22.

Plaintiff alleges that her male counterparts in the FCC were "readily acknowledged" when they requested management to initiate disciplinary measures against their subordinate employees. Id. ¶ 23. In this regard, plaintiff asserts that she was treated in a gender disparate manner by Moore and Imszenmick, which curtailed her ability to perform her job function and undermined her supervisory authority as a female manager. Id. ¶ 17. This, according to plaintiff, created a hostile work environment that spanned over six months, eventually leading to her involuntary resignation from her position as an FCC Supervisor. Id. ¶¶ 25, 26.

## II.   DISCUSSION

Defendants move to dismiss plaintiff's Title VII claim on the following grounds: (1) plaintiff failed to sufficiently allege severe and pervasive harassment to support a hostile work

environment claim; (2) plaintiff failed to sufficiently allege a claim of constructive discharge; and (3) plaintiff failed to produce a right-to-sue letter from the U.S. Equal Employment Opportunity Commission ("EEOC").

### A.    Hostile Work Environment

Defendants assert that plaintiff's alleged sexual discrimination was not sufficiently severe and pervasive to constitute a hostile work environment claim under Title VII. "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." Oncale v. Sundowner Offshore Servs. Inc., 523 U.S. 75, 78 (1998) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). In order to establish a Title VII claim for a hostile work environment, a plaintiff must show: (1) that he or she suffered intentional discrimination in a work environment because of his or her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability. Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir. 1999) (quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d. Cir. 1990)).

For the conduct in question to fall within the purview of Title VII it must be severe and pervasive enough to create an employment environment that is "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did in fact perceive to be so." Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998) (citing Harris, 510 U.S. at 21-22). To determine whether a work environment is sufficiently "hostile" or

"abusive," the Supreme Court has made clear that a court must look to the totality of the circumstances – rather than to conduct on an incident-by-incident basis – including such factors as the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Faragher, 524 U.S. at 787-88 (quoting Harris, 510 U.S. at 23).

In this case, viewing the circumstances as a whole, what the plaintiff alleges does not rise to the level of a work environment that is "hostile" or "abusive." Defendants' alleged failure to discipline plaintiff's subordinate employee and preventing plaintiff from doing so does not amount to an actionable hostile work environment claim. Moreover, although Moore's offhand comments to plaintiff may be deemed obnoxious, and defendants' failure to support plaintiff's attempts to discipline the "problem" employee may not have created an ideal work environment, this conduct certainly is not severe and pervasive enough "to alter the terms and conditions of [the victim's] employment and create an abusive working environment." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986); see also Clark County School District v. Breeden, 532 U.S. 268, 270 (2001) ("A recurring point in [our] opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.") (internal citations and quotations omitted); Faragher, 524 U.S. at 788 ("We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment ...") (emphasis added). Accordingly, the Court concludes that plaintiff's allegations fail to state a valid hostile work environment claim under Title VII.

B.   **Constructive Discharge**

Defendants contend that plaintiff's allegations that the discrimination to which she was

subjected to on the basis of sex amounted to a constructive discharge fails to state a claim under Title VII. The Court employs an "objective test in determining whether an employee was constructively discharged from employment: whether 'the conduct complained of would have the foreseeable result that working conditions would be so unpleasant or difficult that a reasonable person in the employee's shoes would resign.'" Gray v. York Newspapers, Inc., 957 F.2d 1070, 1079 (3d Cir. 1992) (quoting Goss v. Exxon Office Systems Co., 747 F.2d 885, 887-88 (3d Cir. 1984)). Although "no finding of a specific intent on the part of the employer to bring about a discharge is required," a plaintiff must establish that the employer "knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." Goss, 747 F.2d at 888.

In Clowes v. Allegheny Valley Hosp., 991 F.2d 1159 (3d Cir. 1993), cert. denied, 510 U.S. 964 (1993), the Court of Appeals noted several adverse actions that are commonly cited by employees claiming that they were constructively discharged, including threats of discharge, being urged to resign or retire, demotion or reduction in pay or benefits, involuntary transfer to a less desirable position, alteration of job responsibilities, or being given unsatisfactory job evaluations. Id. at 1161. That court later made it clear that such acts are not dispositive factors, but examples of conduct that may be considered by a court in determining whether there was a constructive termination. See Duffy v. Paper Magic Group, Inc., 265 F.3d 163, 168 (3d Cir. 2001) ("[W]e have never made the Clowes factors an absolute requirement for recovery ... The absence of the factors in Clowes is not necessarily dispositive.").

In this case, looking at all the circumstances, the Court concludes that plaintiff has failed to sufficiently allege a claim of constructive discharge. Plaintiff alleges only that defendants

would not allow her to discipline a "problem" employee and rejected her requests that they take corrective action against the employee. This is not conduct that would have the "foreseeable result that working conditions would be so unpleasant or difficult that a reasonable person in [plaintiff's] shoes would resign." Goss, 747 F.2d at 888; McLaughlin v. Rose Tree Media School Dist., 52 F. Supp. 2d 484, 493 (E.D. Pa. 1999) ("To make a showing of [constructive discharge], more than subjective perceptions of unfairness or harshness or a stress-filled work environment are required."). Indeed, in light of the Court's conclusion that plaintiff failed to sufficiently allege the existence of a hostile work environment at the time she voluntarily resigned from defendants' employ, plaintiff "cannot show the necessary predicate to maintain a constructive discharge claim, specifically, that there were 'conditions of discrimination' so intolerable that a reasonable person would have resigned." Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 718-19 (3d Cir. 1997) (quoting Goss, 747 F.2d at 888). Thus, the Court rejects plaintiff's constructive discharge claim.

      C.     EEOC Right-to-Sue Letter and Punitive Damages

In view of the Court's disposition of defendants' motion, it need not reach defendants' argument that plaintiff failed to attach to her Complaint an EEOC right-to-sue letter, but notes that plaintiff provided such a letter dated April 16, 2002, with the Memorandum of Law in Opposition to Defendants' Motion to Dismiss Plaintiff's Complaint (Document No. 9, filed September 13, 2002). Plaintiff filed her Title VII suit in this Court on June 11, 2002, less than ninety (90) days from the date of the EEOC right-to-sue letter, in accordance with 42 U.S.C. § 2000e-5(f)(1), which mandates that an aggrieved party commence an action in federal court within ninety (90) days of receiving an EEOC right-to-sue letter.

Defendants also argue that plaintiff erroneously seeks punitive damages in her Title VII action. The Court need not reach this issue, but notes that a plaintiff is not entitled to recover punitive damages against a municipality, such as the City of Philadelphia, or a municipal agency, such as the City of Philadelphia Fire Department, under Title VII. <u>See</u> 42 U.S.C. § 1981a(b)(1) (explicitly exempting "a government, government agency or political subdivision" from punitive relief in a Title VII action).

### III.   <u>CONCLUSION</u>

For the foregoing reasons, the Court concludes that plaintiff failed to sufficiently allege a hostile work environment claim and constructive discharge claim under Title VII. Therefore, defendants' Motion to dismiss is granted and plaintiff's Complaint is dismissed with prejudice.

**BY THE COURT:**

_____

**JAN E. DUBOIS, J.**